UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| BARRY R. GIBRICK, | ) | No. 12 B 19952 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| CONSUMERS CREDIT UNION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 A 1195 |
| | ) | |
| BARRY R. GIBRICK, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Before the court for ruling in this long-concluded adversary proceeding is the motion of debtor-defendant Barry Gibrick ("Gibrick") under Rule 60(b)(6) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 60(b)(6) (made applicable by Fed. R. Bankr. P. 9024), to vacate the default judgment entered against him and in favor of plaintiff Consumers Credit Union (the "Credit Union"). For the reasons that follow, Gibrick's motion will be denied.

### 1. Background

The facts are taken principally from the parties' papers and attached exhibits. Additional facts are drawn from the dockets in the adversary proceeding and related bankruptcy case, the docket in *United States v. Landgraf*, No. 12 CR 783 (N.D. Ill.), and the web site of the Illinois Attorney Registration & Disciplinary Commission, all matters of which the court can take

judicial notice. No facts are in dispute.

On May 16, 2012, Gibrick filed a chapter 7 bankruptcy case. After the creditors' meeting, the trustee issued a "no distribution" report indicating there was no property to be distributed to Gibrick's creditors. On February 27, 2013, Gibrick received his discharge, and about a week later the bankruptcy case was closed.

While the case was pending, the Credit Union commenced an adversary proceeding against Gibrick. In its complaint, the Credit Union alleged that Gibrick owed it a debt in connection with a car loan, and the debt was nondischargeable under sections 523(a)(2)(A), (a)(2)(B), and (a)(6) of the Bankruptcy Code, 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(6). The complaint and summons were properly served by mail, as Bankruptcy Rule 7004(b) permits, on both Gibrick and Jason Landgraf, his lawyer at the time. Gibrick does not dispute that service was proper. Neither Gibrick nor Landgraf appeared in court on the return date, which in this district serves as an initial status hearing in an adversary proceeding.

Landgraf did not file an appearance for Gibrick in the adversary proceeding, and Gibrick did not answer or otherwise plead to the complaint. The Credit Union accordingly moved for a default judgment. The motion was properly served on Gibrick by mail. Gibrick does not dispute that service of the motion was proper and that he had notice of the motion. Neither Landgraf nor Gibrick appeared when the motion was presented on October 19, 2012. The motion was therefore granted, and a default judgment was entered finding Gibrick owed the Credit Union a debt nondischargeable under section 523(a)(2)(A). The remaining claims were dismissed as moot. There was no appeal.

Because the judgment in the adversary proceeding had not liquidated Gibrick's debt, in January 2013 the Credit Union filed an action against Gibrick in Illinois state court. Gibrick

-2-

defaulted in that action as well, but with the assistance of a new lawyer he managed to have the default judgment against him vacated. When Gibrick again failed to answer the complaint, the Credit Union again moved for a default judgment. On the presentment date, Gibrick appeared without his lawyer. The state court ordered him to answer the complaint, set the matter for mandatory court-annexed arbitration in April 2014, and continued generally the Credit Union's motion for default judgment. In February 2014, Gibrick at last answered the Credit Union's complaint.

The arbitration was thereafter repeatedly continued at Gibrick's request until at last Gibrick's new lawyer withdrew in August 2014. The withdrawal resulted in yet another continuance of the arbitration, this time to September 17, 2014. On September 17, neither Gibrick nor any lawyer representing him appeared for the arbitration. The state court accordingly granted the Credit Union's motion for default judgment and entered judgment against Gibrick. In December 2014, Gibrick moved to vacate that judgment, but the motion was denied with prejudice.

One month later, in January 2015, Gibrick returned to the bankruptcy court, moving to vacate the judgment in the adversary proceeding entered against him more than two years earlier. The motion was filed by the same lawyer who had represented Gibrick off and on in the state court. In his motion, Gibrick asserts (and his assertions are taken as true for purposes of the motion) that his lawyer in the bankruptcy case, Landgraf, was to blame for his failure to appear in and defend the adversary proceeding.

According to Gibrick, Landgraf told him six weeks after the adversary proceeding was filed that "he would take care of it." Thereafter, Gibrick tried repeatedly to reach Landgraf to find out the status of the adversary proceeding but was unable to do so; Landgraf's office staff

told Gibrick simply that the matter was "being handled." Three months after Landgraf failed to "handle" the adversary proceeding and the default judgment was entered, Gibrick managed to track him down at his office. Landgraf told Gibrick there was nothing to be done about the default judgment because Gibrick did not have "enough evidence to rebut" the allegations in the complaint anyway. Gibrick then gathered what he believed to be relevant evidence, took the evidence to Landgraf's office, and was told that Landgraf "would take care of it." He did not.[1]

Gibrick now asks to have the default judgment in the adversary proceeding vacated pursuant to Rule 60(b)(6). He maintains the default judgment should be vacated on two grounds: (1) the judgment was entered only as a result of Landgraf's "unconscionable" representation, and (2) the Credit Union "failed to prove" its section 523(a)(2)(A) claim.

## 2. Discussion

The motion to vacate the default judgment will be denied. Neither ground Gibrick offers is a valid one for vacating a judgment under Rule 60(b)(6). Gibrick waited too long to seek relief in any event.

### a. Rule 60(b)(6)

Rule 60(b) permits the court to "relieve a party . . . from a final judgment, order, or proceeding" on six specified grounds. Fed. R. Civ. P. 60(b). The sixth ground is a catch-all,

---

[1] Gibrick also mentions that in October 2012, around the time the Credit Union filed its adversary proceeding, Landgraf was indicted on three counts of bank fraud in connection with two furniture leasing businesses he operated. In September 2013, he pled guilty to one count of the indictment and is currently awaiting sentencing. In March 2014, Landgraf was disbarred on consent. Gibrick's reason for mentioning all of this is unclear. Landgraf was evidently neither a paragon of virtue nor a leading light of the bar, but Gibrick fails to explain the relevance of either the criminal prosecution or the disbarment to his request for relief from judgment.

authorizing vacatur for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Relief under any of the grounds in Rule 60(b) "is an extraordinary remedy and is granted only under exceptional circumstances." *Kathrein v. City of Evanston*, 752 F.3d 680, 690 (7th Cir. 2014); *Venson v. Altamirano*, 749 F.3d 641, 651 (7th Cir. 2014); *Johnson v. General Bd. of Pension & Health Benefits*, 733 F.3d 722, 733 (7th Cir. 2013), *cert. denied*, ___ U.S. ___, 135 S. Ct. 92 (2014); *Willis v. Lepine*, 687 F.3d 826, 833 (7th Cir. 2012).

Relief under the catch-all provision in Rule 60(b)(6) is particularly rare since that provision represents "an even more highly circumscribed exception in [a] rule already limited to exceptional circumstances." *Neuberg v. Michael Reese Hosp. Found.*, 123 F.3d 951, 955 (7th Cir. 1997); *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 700 (7th Cir. 1995). Relief under Rule 60(b)(6) is thus available "only in the most extraordinary of circumstances." *Popovich*, 71 F.3d at 700 (internal quotation omitted); *see also Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.*, 131 F.3d 625, 631 (7th Cir. 1997) (noting that "a more compelling showing of inequity or hardship is necessary to warrant relief") (internal quotation omitted).

Not only must the movant demonstrate extraordinary circumstances justifying relief, but the movant must also seek relief "within a reasonable time." Fed. R. Civ. P. 60(c); *see also Mendez v. Republic Bank*, 725 F.3d 651, 657 (7th Cir. 2013). What constitutes a "reasonable time" for purposes of Rule 60(b)(6) depends on the facts of each case. *Shakman v. City of Chicago*, 426 F.3d 925, 932 (7th Cir. 2005); *Ingram v. Merrill Lynch, Fenner & Smith, Inc.*, 371 F.3d 950, 952 (7th Cir. 2004) (per curiam). Although there is "'no hard and fast rule,'" courts consider "'the interest in finality, the reasons for the delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and the consideration of prejudice, if any, to other parties.'" *Ingram*, 371 F.3d at 952 (quoting *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610

(7th Cir. 1986)).

Whether to grant relief under Rule 60(b) rests with the trial court's discretion. *Mendez*, 725 F.3d at 657; *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009). Because the decision is "closely related to the circumstances of the judgment and the equities of a particular case," trial judges have "broad discretion to deny motions for relief from judgment." *Mendez*, 725 F.3d at 657.

### b. Gibrick's Grounds for Relief

Gibrick has supplied no extraordinary circumstances that might warrant relief under Rule 60(b)(6).

### i. Landgraf's Unconscionable Representation

Gibrick's main argument, that Landgraf's "unconscionable representation" in the adversary proceeding constitutes such a circumstance, is a non-starter. As the Credit Union correctly observes, the court of appeals for this circuit has made abundantly clear that "[a] lawyer who inexcusably neglects his client's obligations does not present exceptional circumstances" for purposes of Rule 60(b)(6). *Bakery Mach.*, 570 F.3d at 848; *see also Popovich*, 71 F.3d at 700; *United States v. 7108 W. Grand Ave.*, 15 F.3d 632, 635 (7th Cir. 1994). This is so whether the neglect constitutes ordinary negligence, gross negligence, or willful misconduct, *7108 W. Grand Ave.*, 15 F.3d at 635, including deception, *Bakery Mach.*, 570 F.3d at 848. The lawyer's misconduct as agent of his client-principal is "the problem of the client," not the problem of the client's opponent. *Id.*

In support of his position, Gibrick relies exclusively on *In re Robenson*, 124 B.R. 757 (N.D. Ill. 1991), in which the district court found a lawyer's "unconscionable" neglect of his

client's case (this is where Gibrick gets the term "unconscionable") was enough to satisfy Rule 60(b)(6). *Id.* at 759. Later decisions from the court of appeals, however – decisions that unlike *Robenson* are binding – disagree. *See Bakery Mach.*, 570 F.3d at 848; *Popovich*, 71 F.3d at 700; *7108 W. Grand Ave.*, 15 F.3d at 635. In *Bakery Machinery*, the court noted that after *7108 West Grand Avenue*, *Robenson* was no longer good law. *See Bakery Mach.*, 570 F.3d at 848; *see also United States v. Briley*, No. 01 C 4183, 2002 WL 238374, at *4 (N.D. Ill. Feb. 19, 2002) (finding even before *Bakery Machinery* that *Robenson* was "inconsistent" with *7108 West Grand Avenue.*).

Faced with these decisions, Gibrick invokes the two exceptions to the rule that all lawyer misconduct is binding on the client. In *Bakery Machinery*, the court noted that the rule does not apply in cases where the lawyer's misconduct "is outside the scope of employment" or in cases of "excusable neglect." *Bakery Mach.*, 570 F.3d at 848. Gibrick asserts both exceptions apply.

He is mistaken. First, Landgraf's misconduct was in no way outside the scope of his employment. Gibrick hired Landgraf to defend him in the adversary proceeding. His actions or inactions in the course of that representation fell within the scope of what he was hired to do. In arguing otherwise, Gibrick seems to assume that Landgraf's negligence must have been outside the scope of his employment because he was not hired to be a negligent lawyer. But whether a person's conduct was tortious is a question separate from whether that conduct fell within his scope of employment. Otherwise, negligence would always be outside the scope of someone's employment, since no one is ever employed to be negligent. It is well established, consequently, that negligent acts can fall within a person's scope of employment, as can willful, malicious, and even criminal acts. *See Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163-64, 862 N.E.2d 985, 991 (1997); *Coghlan v. Beck*, 984 N.E.2d 132, 154 (Ill. App. Ct. 2013).

The second exception, excusable neglect, is not available to Gibrick because it is never available under Rule 60(b)(6). Excusable neglect is a ground for relief specified in Rule 60(b)(1). Because the grounds under Rule 60(b)(1) must be asserted within one year of the entry of judgment, *see* Fed. R. Civ. P. 60(c)(1), they are not available under the temporally-more-lenient Rule 60(b)(6). *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 393 (1993) (stating that "a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)"); *Lowe v. McGraw-Hill Cos.*, 361 F.3d 335, 342 (7th Cir. 2004). The subparts of Rule 60(b) are "'mutually exclusive.'" *Mendez*, 725 F.3d at 657 (quoting *Pioneer*, 507 U.S. at 393). Gibrick is well beyond the one-year limit in Rule 60(b)(1).

In any event, Gibrick gives himself too much credit in insisting he is blameless and the fault for his predicament lies solely with Landgraf. Gibrick himself was served with the complaint in the adversary proceeding but did nothing. Not until well after an answer was due did he try to contact Landgraf to find out what was going on. Gibrick then was served with the motion for default judgment (Landgraf was not). Again, Gibrick did nothing. The motion was granted and judgment entered. Rather than seek relief from the judgment, however, he chose to fight the Credit Union's action in the state court. Yet he repeatedly failed to appear there, too, with the inevitable result. Only after he lost in the state court did Gibrick ask to have the default judgment in the adversary proceeding vacated. What the record here shows is not excusable neglect but simply neglect, if not intentional delay.

### ii. The Credit Union's Failure to Prove its Claim

Gibrick's other argument for vacating the default judgment, that the Credit Union failed

to prove its allegations, is easily dispatched.

The Credit Union had no obligation to prove its allegations. Gibrick's default alone was enough to prove them. "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007); *see also Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014) (stating that a default judgment "conclusively establishes liability"). *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Damages are another matter, of course, and must be proved even when a defendant defaults. *Domanus*, 742 F.3d at 303; *e360 Insight*, 500 F.3d at 602. But the Credit Union did not seek damages; it sought only a declaration that Gibrick's debt was nondischargeable. The Credit Union was entitled to that declaration based purely on Gibrick's failure to defend.

Gibrick contends that the Credit Union not only did not prove its allegations but could not prove them. Gibrick argues at some length that there was nothing to the adversary complaint, the complaint's allegations were false, because in fact he owed no debt to the Credit Union for money obtained by fraud. But the time for contesting the Credit Union's allegations was in 2012 when the adversary complaint was filed. Having failed to contest the allegations then, Gibrick has no right to contest them now. His chance to dispute the Credit Union's complaint has come and gone.

### c. Gibrick's Failure to Move within a Reasonable Time

Even if Gibrick had offered some extraordinary circumstance otherwise warranting relief under Rule 60(b)(6), his motion would have to be denied. As discussed above, a Rule 60(b)(6) motion must be brought within a reasonable time. Fed. R. Civ. P. 60(c); *see also Mendez*, 725

F.3d at 657. Gibrick's motion was not.

Gibrick filed his motion more than two years after the judgment he wants vacated was entered. He has no legitimate excuse for the delay. Gibrick knew about the Credit Union's adversary proceeding because he was served with the complaint. He knew about the Credit Union's motion for default judgment because he was served with that, too. He never appeared in the bankruptcy court, with or without Landgraf, to contest either one. Instead, he allowed the default judgment to be entered. But rather than move promptly in the bankruptcy court for relief from the judgment under Rule 59 or even Rule 60, he elected to spend the next two years trying to fend off the Credit Union's efforts in the state court to liquidate the debt.

Even there, however, Gibrick continually failed to appear, prompting multiple motions for default judgment from the Credit Union. Eventually the state court granted the Credit Union's request and entered a default judgment against Gibrick when he failed to show up for a scheduled mandatory arbitration. Not until Gibrick ended up on the sharp end of that judgment and the state court rebuffed his attempt to have it vacated did he return to the bankruptcy court and seek relief from the judgment in the adversary proceeding – more than 26 months after that judgment was entered.

Vacating the judgment in the adversary proceeding would be grossly unfair and unreasonably prejudicial to the Credit Union. The Credit Union did everything it was required to do and has doubtless incurred considerable expense pursuing Gibrick first in the bankruptcy court, then in the state court, and now in the bankruptcy court again. Putting things back to square one after all this time would penalize the Credit Union when it has been blameless and would reward Gibrick's inattention and delay.

It is true, as Gibrick points out, that traditionally default judgments have been disfavored.

*In re State Exchange Finance Co.*, 896 F.2d 1104, 1106 (7th Cir. 1990).[2] But endless litigation is also disfavored, and parties should be held to their strategic decisions. "Effective judicial administration requires that at some point disputes be treated as finally and definitively resolved." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2693 at 99 (3d ed. 1998). That point has unquestionably been reached here.

### 3. Conclusion

The motion of debtor-defendant Barry Gibrick under Rule 60(b)(6) to vacate the default judgment against him is denied. A separate order will be entered consistent with this opinion.

Dated: February 25, 2015

                                         A. Benjamin Goldgar
                                         United States Bankruptcy Judge

---

[2] There is less potency to the traditional view, though, than there once was. In *State Exchange*, the Seventh Circuit observed that it had "moved away" from it and was "increasingly reluctant" to interfere with refusals by trial courts to set aside default judgments. *Id.*